**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

SUSAN C. CASH

        Debtor

Case No.  12-30263

JOHN P. NEWTON, JR., TRUSTEE

        Plaintiff

v.

MARY MCKAY

        Defendant

Adv. Proc. No.  12-3077

## M E M O R A N D U M

**APPEARANCES:**    MAYER & NEWTON
        John P. Newton, Jr., Esq.
        Richard M. Mayer, Esq.
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee  37919
        Attorneys for Plaintiff

        STEVE MERRITT, ESQ.
        525 West Lamar Alexander Parkway
        Maryville, Tennessee  37801
        Attorney for Defendant

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff on October 4, 2012, seeking to avoid an allegedly fraudulent transfer of real property from the Debtor to the Defendant pursuant to 11 U.S.C. §§ 547(b) and/or 548(a)(1) (2006).  The trial was held on March 25, 2014.  The record before the court consists of twelve exhibits introduced into evidence and the testimony of three witnesses, the Debtor, the Plaintiff, and the Defendant.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(F), (H) (2006).

# I

At a foreclosure sale held on June 26, 2008, the Debtor and her then husband, Grant Cash, attended and purchased real property located at 243 Shenendoah Drive, Friendsville, Tennessee (Shenendoah Drive Property) from Nationwide Trustee Services, Inc., Substitute Trustee, for $105,976.33.  TRIAL EX. 3; TRIAL EX. 11.  The Debtor and Grant Cash received the funds for the purchase of the Shenendoah Drive Property from the Debtor's parents, the Defendant and her now deceased husband.  In association with the foreclosure, a Substitute Trustee's Deed dated June 26, 2008, was delivered to the Debtor and Grant Cash.  TRIAL EX. 3.  The Substitute Trustee's Deed was not, however, recorded with the Blount County Register of Deeds until December 30, 2010.  TRIAL EX. 3.

On November 22, 2010, an Order was entered in the General Sessions Court for Blount County, Tennessee, granting the Debtor and Grant Clemons Cash an absolute divorce.  TRIAL EX. 10. In addition to granting the divorce, the Order also directed that

> any interest the parties may have in real property located at 243 Shenendoah Dr., Friendsville, Tennessee shall be conveyed to the Plaintiff's mother, Mary McKay.

2

> The parties shall cooperate in the process of transferring the above real property to Mary McKay including, but not limited to, the execution of any and all documents to effectuate said transfer.

TRIAL EX. 10 at ¶ 2. In compliance with the divorce Order, the Debtor and Grant Clemons Cash transferred the Shenendoah Drive Property to the Defendant by a Quit Claim Deed executed by Grant Cash on March 24 and by the Debtor on March 21, 2011, and recorded with the Blount County Register of Deeds on March 25, 2011. TRIAL EX. 4. On October 12, 2012, the Defendant, through the Debtor acting pursuant to the terms of a Specific Power of Attorney for the Sale of Real Property (Power of Attorney), transferred the Shenendoah Drive Property by Warranty Deed to Adam and Caitlin Cook for a sales price of $133,500.00, from which she netted $120,863.48 at closing. TRIAL EX. 5; TRIAL EX. 6; TRIAL EX. 9.

On January 24, 2012, the Debtor filed the Voluntary Petition commencing her Chapter 7 bankruptcy case, and the Plaintiff was appointed as Chapter 7 Trustee. In response to question 10 of her Statement of Financial Affairs, entitled "Other Transfers," the Debtor listed a transfer of "realty which she was co-owner and pursuant to Divorce Decree entered #S-17159 in Blount County, Tennessee on 12/7/10" to the Defendant, with the Shenendoah Drive Property listed as her mother's address. COLL. TRIAL EX. 2. On October 4, 2012, the Plaintiff timely filed the Complaint seeking to avoid the transfer of the Shenendoah Drive Property from the Debtor to the Defendant.[1] Pursuant to the Pre-Trial Order entered on May 14, 2013, the issues before the court are:

a. Is the Plaintiff entitled to avoid the transfer of the Shenendoah Drive Property or the value of such property pursuant to 11 U.S.C. § 548(a)(1)(A)?

---

[1] Because the Shenendoah Drive Property was titled jointly to the Debtor and her non-debtor former husband, only the Debtor's interest is potentially subject to avoidance.

3

    b. Is the Plaintiff entitled to avoid the transfer of the Shenendoah Drive Property as a preferential payment to the Defendant pursuant to 11 U.S.C. § 547(a)?

    c. Is the Plaintiff entitled to recover an avoided transfer or the value from the Defendant as the transferee under 11 U.S.C. § 550?

PRETRIAL ORDER at 2. At trial, the Plaintiff testified that he is not asking for the property itself but instead seeks recovery of $52,988.00, representing the value of the Debtor's one-half interest in the Shenendoah Drive Property that was transferred to the Defendant through the Quit Claim Deed on March 24, 2011.

## II

The Plaintiff initially seeks to avoid the transfer of the Shenendoah Drive Property under 11 U.S.C. § 548(a), which, as material to this adversary proceeding, provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1). The burden of proof that the transfer was made with the requisite fraudulent intent by a preponderance of the evidence falls upon the Plaintiff. *BankEast v. Shirley (In re Shirley)*, 2011 WL 4054773, at *3, 2011 Bankr. LEXIS 3496, at *9 (Bankr. E.D. Tenn. Sept. 12, 2011) (citations omitted); *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 793 (Bankr. S.D. Ohio 2009).

4

"Because proof of actual intent to hinder, delay, or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer." *Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 416 (6th Cir. 2005). Whether a transfer is fraudulent under § 548(a)(1)(A) is often presumed through the presence of badges of fraud, which are facts throwing suspicion on the transaction that call for an explanation. *Holcomb Health Care Servs., LLC v. Quart Ltd., LLC (In re Holcomb Health Care Servs., LLC)*, 329 B.R. 622, 670 (Bankr. M.D. Tenn. 2004) (citations omitted); *see also Triple S Rests., Inc.*, 422 F.3d at 414 ("Badges of fraud are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them.") (citation omitted).

> "The issue of fraud is commonly determined by certain recognized indicia, denominated 'badges of fraud,' which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them. Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud.'" *United States v. Leggett*, 292 F.2d 423, 426-27 (6th Cir.1961) (citations omitted); *see also Children's Orchard, Inc. v. Children's Orchard Store No. 142, Inc.*, 2010 WL 2232440, at *5 n.3 (E.D. Mich. May 28, 2010) (stating that the Sixth Circuit has also recognized the following as badges of fraud: "including: (1) a close relationship between the parties; (2) a transfer for no consideration; (3) the transferor's continued relationship with the property, for example, in the form of ongoing mortgage, tax and insurance payments on the property; and (4) each party's awareness of the transferor's increasing financial difficulty") (citing *United States v. Issac*, 1992 WL 159795, at *4 (6th Cir. July 10, 1992)).

*Shirley*, 2011 WL 4054773, at *4, 2011 Bankr. LEXIS 3496, at *10-11. The Plaintiff argued and the record establishes the existence of three badges of fraud. First, the Defendant is the Debtor's mother, and the two have a close personal relationship. Second, it is undisputed that the Defendant paid no consideration to the Debtor for the transfer of the Shenendoah Drive Property in March 2011. Third, both the Debtor and the Defendant testified at trial that the Debtor was having financial difficulties at the time of the transfer. The Defendant testified that in March 2011, the Debtor had

5

gotten divorced, was out of work, had her house foreclosed, and, with her children, had moved in with the Defendant. This testimony was corroborated by the Debtor, who also testified that all except a couple of the debts listed in her statements and schedules were incurred prior to 2011. *See* COLL. TRIAL EX. 2.

"Once a plaintiff establishes a sufficient number of badges of fraud, the burden shifts to the defendant to demonstrate that the debtor received a benefit or that there was some legitimate purpose for the transfer." *Grove-Merritt*, 406 B.R. at 794. "Although the presence of a single badge may only raise suspicion of [a] debtor's fraudulent intent, the confluence of several badges can be conclusive evidence of fraudulent intent, absent significantly clear evidence of debtor's legitimate supervening purpose." *Holcomb Health Care Servs., LLC*, 329 B.R. at 671 (citations omitted); *see also Silagy v. Morris (In re Morris)*, 2013 WL 5705630, at *16, 2013 Bankr. LEXIS 4369, at *52 (Bankr. N.D. Ohio Oct. 18, 2013) ("Once the burden of proof has transferred to the debtor, if he cannot offer a legitimate reason for the transfer, actual fraud will be shown."). "This is a heavy burden: The burden which shifts . . . is not a burden of going forward with the evidence requiring the [debtor] to explain away nature inferences, but a burden of proving that he has not committed the objectionable acts with which he has been charged." *Sullivan v. Gergen (In re Lacina)*, 451 B.R. 485, 489 (Bankr. D. Minn. 2011) (citation omitted). Both the Debtor and the Defendant testified at trial that the money used by the Debtor and her former spouse to purchase the Shenendoah Drive Property in June 2008, represented the equity from the residence then owned by the Defendant and her late husband, and was given to the Defendant for the sole purpose of purchasing the property at foreclosure as an investment. Both additionally testified that it was not a gift or a loan, that the intent of all parties was that the Shenendoah Drive Property belonged to the Defendant and her late

6

husband, and it was titled in the Debtor's name only because she was the one who actually was able to physically attend the sale.

The court finds both the Debtor and the Defendant credible and believes their version of the events surrounding the transfer on March 24, 2011. The Defendant, who is 82 years old, testified that after she and her husband lost money in 2007, they became interested in investing in real property. She testified that she and her husband relied upon their daughter, the Debtor, to purchase the Shenendoah Drive Property for them, using their money, and that at all times thereafter, she believed that the Shenendoah Drive Property belonged to them, but that they had let the Debtor "do the paperwork." The Defendant also testified that when they purchased the Shenendoah Drive Property at foreclosure, she and her late husband had intended to share some of the profit with the Debtor and Grant Cash once it resold, but there was no set amount that they had agreed upon nor was there anything in writing to that end. The Defendant further testified that it was not until the time of the Debtor's divorce from Grant Cash that she learned that the property was not in her name; however, she was not concerned because she trusted her daughter completely. With respect to the Defendant's subsequent sale of the Shenendoah Drive Property to the Cooks, which was accomplished by the Debtor acting on the Defendant's behalf through a Power of Attorney, the Defendant testified that she was in agreement with the sale but could not be present because she was in Hawaii at the time helping her grandson's wife while he was stationed overseas. The Defendant also testified that the majority of the proceeds from the sale of the Shenendoah Drive Property were used to pay off the mortgage on her residence in Maryville, Tennessee.

The Debtor's testimony mirrored that of her mother. She testified that she had been told by others that flipping houses was a good investment, and she suggested to her parents, who were on a fixed income, that they buy a house in foreclosure, fix it up, and then resell it for a profit in order to subsidize their income. When her father agreed, he – with the Defendant's knowledge and agreement – arranged for the Debtor and Grant Cash to obtain the $105,976.33 used to purchase the Shenendoah Drive Property out of the equity in her parents' house, which they then tendered to the Substitute Trustee, Nationwide Trustee Services, Inc., in the form of a cashier's check from Citizens Bank when she and Grant Cash physically went to the foreclosure sale and purchased the property. TRIAL EX. 8. The Debtor testified that nothing had been put into writing between her parents and herself because they were family and it was not necessary, that she had never expected to obtain any profit from the Shenendoah Drive Property for herself, and that she at all times acted on behalf of her parents. When the Shenendoah Drive Property did not sell quickly, the Debtor and her mother decided to lease it with an option to purchase. Both the Debtor and the Defendant testified that the Defendant relied on the Debtor to handle all paperwork and issues with the Shenendoah Drive Property for her mother, and on January 12, 2009, the Debtor entered into a Lease With Purchase Option (Lease) with Stephanie and James McCuiston. TRIAL EX. 12. Although the terms of the initial Lease, executed by the Debtor and one of the Lessees, directed that payments go directly to the Debtor, the amendment dated February 12, 2011, was signed by both the Debtor and the Defendant and names both as lessors. TRIAL EX. 12. Additionally, the Debtor testified that all of the lease purchase payments were put into her mother's bank account and used to pay off the home equity line of credit on her mother's residence in Maryville and to pay for taxes and any repairs to the Shenendoah Drive Property.

8

After the Lease option with the McCuistons fell through and they were unable to purchase the Shenendoah Drive Property, it was sold by the Defendant to the Cooks in October 2012. The Debtor, at her mother's direction, used the proceeds to pay off the $110,649.79 debt owed on the Defendant's house, paid $2,000.00 to the Defendant's attorney in this adversary proceeding, paid taxes, tuned up an unspecified car, and used $1,500.00 for the Debtor's son. *See* TRIAL EX. 7. The remaining balance of the sale proceeds were deposited by the Debtor into the Defendant's bank account.

The Plaintiff questioned the Debtor about her debts at the time she transferred the Shenendoah Drive Property, and the Debtor acknowledged that she owed the majority of the debts listed in her statements and schedules in March 2011, testifying that she believed she had acquired a majority of the debt in her divorce since most of it was in her name and that her prior residence with Grant Cash had been foreclosed upon in November 2010, requiring her to move in with the Defendant. Additionally, the Debtor testified that she had been employed by Maryville City Schools but after her position was cut, she went to work for Loudon County Schools; however, her position with that school district was likewise eliminated, and the unemployment payments that she received afterwards were not enough to keep up with her payments, all of which led to her filing for bankruptcy.

Notwithstanding the Debtor's financial difficulties, the court believes the Debtor's explanation as to the timing of the recording of the Substitute Trustee's Deed and the Quit Claim Deed to the Defendant. These parties are not sophisticated business people routinely engaged in the purchase and sale of real estate. The Debtor testified that she encouraged her parents to purchase

9

the Shenendoah Drive Property as an investment in order to subsidize their fixed retirement income; however, neither she nor her parents had any experience with buying and flipping real property. The Debtor's father arranged for the Debtor and Grant Cash to go to the foreclosure sale in order to purchase the Shenendoah Drive Property with the equity from the residence then owned by the Debtor's parents. Because they were the parties physically present at the sale, and at her parents' request because they desired for the Debtor to take care of all paperwork associated with the property, the property was titled in the Debtor's and Grant Cash's names. The Debtor did not, however, record the Substitute Trustee's Deed at the time she acquired the Shenendoah Drive Property at foreclosure on June 26, 2008, testifying that she was not aware that she had to until, through the course of her divorce proceeding, she was made aware that the property was still in her name and would have to be transferred to her mother. In order to do so, the Debtor recorded the Substitute Trustee's Deed on December 30, 2010, subsequent to the Order granting her divorce and directing her and Grant Cash to transfer the Shenendoah Drive Property to the Defendant. Thereafter, on March 24, 2011, the Debtor, ten months prior to the commencement of her bankruptcy case, executed the Quit Claim Deed to the Defendant, and the Defendant, subsequent to the commencement of the Debtor's case, sold the Shenendoah Drive Property in October 2012, using the proceeds to pay off the mortgage on her residence, against which the money to pay for the Shenendoah Drive Property had been borrowed. The court is convinced that there was no collusion or fraudulent intent concerning these transfers between the Debtor and the Defendant, and the Plaintiff's avoidance action fails under § 548(a)(1)(A).

### III

The Plaintiff alternatively seeks to avoid the transfer of the Shenendoah Drive Property to the Defendant as a preferential transfer under 11 U.S.C. § 547(b), which allows Chapter 7 trustees to avoid transfers made by debtors to creditors if the following elements are satisfied:

> (b)  Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property —
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made —
>
>> (A) on or within 90 days before the date of the filing of the petition; or
>>
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if —
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). "For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section." 11 U.S.C. § 547(g) (2006). Additionally, because the Defendant is an insider of the Debtor, the look-back period for preferential

11

transfers extends to one year.[2] Finally, there is a statutory presumption of insolvency for the Debtor, that she was "presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition[,]" 11 U.S.C. § 547(f) (2006).

It is undisputed that the transfer of the Shenendoah Drive Property from the Debtor to the Defendant occurred within the year preceding the filing of the Debtor's Chapter 7 case, that the Defendant is an insider of the Debtor, and that under the Debtor's own testimony, she was insolvent when she transferred the Shenendoah Drive Property by Quit Claim Deed to the Defendant on March 24, 2011.  In support of this remaining elements, the Plaintiff argues that the Defendant loaned the Debtor the money to purchase the Shenendoah Drive Property in 2008, which made her a creditor and made the debt antecedent.  He also argues that without the transfer, the Defendant would not have received an equivalent value had the transfer not been made.

The Plaintiff's preference action fails because, based upon the credible testimony of both the Defendant and the Debtor, the court finds that the Defendant was not a creditor of the Debtor and that there was, therefore, no antecedent debt. The Bankruptcy Code defines "creditor" as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A) (2006), and defines "claim" in material part as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A) (2006).  As discussed, the proof establishes that the funds used to purchase the Shenendoah Drive Property belonged at all times to the Defendant and her late husband and that

---

[2] The Defendant, as the Debtor's mother, is a "relative of the debtor" and, therefore, an "insider." 11 U.S.C. § 101(31)(A)(i) (2006).

12

the Debtor and Grant Cash purchased the Shenendoah Drive Property at a foreclosure sale for the exclusive benefit of her parents. The undisputed testimony establishes that all lease payments received and the proceeds from the sale of the Shenendoah Drive Property in October 2012 were deposited into the Defendant's bank account and used to pay off the home equity line of credit on her Maryville residence against which she and her husband borrowed the $105,976.33 used by the Debtor and Grant Cash to purchase the Shenendoah Drive Property in June 2008. There was no debtor/creditor relationship between the Debtor and the Defendant; instead, at all times, both believed that the Shenendoah Drive Property belonged solely to the Defendant, and it was only after they realized that it was still legally titled in the Debtor's name that the Substitute Trustee's Deed was recorded and, subsequently, the Quit Claim Deed was executed and recorded. Accordingly, because all of the elements of § 547(b) cannot be proved, the Complaint will also be dismissed as to that count.

A Judgment consistent with this Memorandum will be entered.

FILED: April 22, 2014

                                                 BY THE COURT

                                                 */s/  RICHARD STAIR, JR.*

                                                 RICHARD STAIR, JR.
                                               UNITED STATES BANKRUPTCY JUDGE